■ MARGARET A. SABATIELLO, Individually and as Administratrix of the Estate of WILLIAM SABATIELLO, Deceased, Respondent, v. NEW YORK CITY TRANSIT AUTHORITY, Appellant.— Judgment, Supreme Court, New York County, entered on April 10, 1974, in favor of plaintiff, after a nonjury trial in this wrongful death action, affirmed with $60 costs and disbursements to the respondent. The dissent is an eloquent exposition of the various questions of fact which were presented to the trial court and we would need go no further than to say that these questions involved determinations of the credibility of the witnesses, and that therefore the conclusion reached by the court should not

be disturbed. The dissent obviously disagreed with the trial court's determination and would hold contrary to it. But that is no reason for reversing. The arguments presented in the dissent best qualify as a summation on behalf of the defendant, but not as a legal argument to reverse the judgment below. The ultimate question presented at the trial was whether there was sufficient time within which to bring the train, involved in the accident, to a halt before striking the deceased. The record amply supports the finding by the court that there was. We take issue with the statement in the dissent, to wit: that the trial court failed to consider the fact that the testimony of plaintiff's expert was based on the stopping time for an empty train. This overlooks the following testimony of this witness on cross-examination. " Q. In the stopping of a train does a load mean anything? A. How do you mean? Q. Well, whether it is 1,000 passengers on a car or 100 passengers on a car, in a train, rather? The load of a train? The Court: Does that affect the stopping distance? The Witness: No, not appreciably. Q. None whatsoever? A. Not appreciably, in an emergency stop; and I can explain that if you want to." The offer of the witness to explain was brushed aside by defendant's counsel who, sensing possible unfavorable effects on his case, moved swiftly on to another line of questioning. Concur — Tilzer, Capozzoli and Macken, JJ.; Steuer, J. P., dissents in the following memorandum: The undisputed facts in this fatal accident are as follows: The deceased, on the morning of October 1, 1969, somehow fell off the downtown platform of the IRT Brooklyn Bridge station. He was blind and virtually helpless on the downtown tracks. Shortly thereafter an uptown train pulled into the station. Bunting, the motorman, saw the deceased on the downtown track and, after stopping his train, dismounted from it and started toward the deceased to help him. As he did so he saw the reflection of the headlights of a southbound train on the rails and realized that he would not be able to reach the deceased in time. Instead, he turned and started north to signal the approaching train. He did so signal, and Brown, the motorman of the southbound train, saw Bunting's signal and endeavored to stop. The train, however, was not stopped in time, and the deceased was crushed between the train and the platform, resulting in his death. The case was tried without a jury and the trial court made the most commendable efforts to arrive at the operative facts. Several factual issues were presented: Where was Bunting when he gave the signal? Where was Brown's train when the signal was given? Where was the deceased when the contact was made, as distinct from where his body was when finally extricated from between the train and the platform? After these questions were resolved it then had to be determined whether the train could have been stopped before reaching the deceased. Obviously, neither Bunting nor Brown were, in this emergency, concentrating on their exact positions at the time, and their testimony is necessarily vague on these points. They could not fix the positions within 50 feet. The court made extraordinary efforts, visiting the scene and endeavoring to arrive at a proper conclusion. Having made the best determination he could upon these uncertainties, the next question was the stopping potential of the train. Here, instead of uncertainty there was a real conflict in the evidence. As a trier of the facts, the court, in its conclusion, is entitled to respect. Apparently the court did not take into consideration the fact that the plaintiff's expert's testimony was based on the stopping time for an empty train. This is an important factor, not because of the added velocity given to the train from the weight of the passengers but because of the effect that a sudden, abrupt stop will have on those passengers. As testified, a stop at the maximum potential will cause multi-

ple injuries to those riding on the train. Having reached a conclusion, the court, by a nice calculation, determined that the train could have been stopped before contact with the deceased was made. Assuming as correct all of the findings of the court as to speed, distances and stopping time, I do not believe that a cause of action was established. Incontrovertibly, Brown, the motorman, was faced with an emergency not of his own making. Can it be said that he failed to use reasonable care because he failed to stop within a few feet or a few seconds of where he might have? I am well aware that a negative answer to this question, supported by a long line of cases, is as old fashioned as the cases themselves are ancient, and that limiting liability to instances where there is a failure to act up to the standard of the reasonably prudent man receives lip service only, as instanced here. Nevertheless, I would vote to reverse; and as a new trial could produce neither clarification of the facts nor a more careful hearing, I would vote to dismiss the complaint.